J-S09030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: L.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.J., BIRTH MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1507 WDA 2018 |

Appeal from the Order Entered September 21, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000082-2018

BEFORE:   PANELLA, P.J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 05, 2019**

C.J. (Mother) appeals from the trial court's order involuntarily terminating her parental rights to her minor son, L.H. (born 1/17).[1]  After careful review, we affirm.

The Allegheny County Office of Children, Youth and Families (CYF) removed L.H. from Mother's care five days after his birth when Mother admitted to using cocaine and heroin during her pregnancy[2] and also having

---

[1] On May 30, 2018, L.H.'s biological father, L.H., Sr., consented to termination of his parental rights.  He is not involved in this appeal.

[2] Although at the time of L.H.'s birth neither Mother nor L.H. tested positive for any substances, L.H. remained in the neonatal intensive care unit for monitoring of withdrawal symptoms from exposure to substances while in utero.  CYF Petition to Terminate Parental Rights, 4/10/18, at ¶ 9.

---

*   Retired Senior Judge assigned to the Superior Court.

been diagnosed with bi-polar disorder.[3] Hospital staff had to call security to intervene when Mother became verbally aggressive toward them. The nursing staff also had concerns about Mother's parenting skills when she gave L.H. water against their medical advice. An emergency custody authorization was issued on January 17, 2017, and L.H. was placed in foster care. On May 10, 2017, L.H. was adjudicated dependent. At the dependency adjudication, Mother admitted to having mental health, drug and alcohol issues, as well as to having had her parental rights terminated with regard to her two older children. **See supra** n.2. At the dependency adjudication, the court also found aggravating circumstances existed due to Mother's previous parental rights' terminations. Despite this finding, the goal with L.H. remained reunification; the court set forth the following objectives for Mother: address mental health, drug and alcohol issues; visit with L.H.; and take parenting classes. On April 10, 2018, CYF filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(2), (5), (8), and (b).

---

[3] Prior to L.H.'s birth, CYF had been involved with Mother and her two older children due to issues of domestic violence, as well as Mother's unaddressed substance abuse and mental health issues. CYF Petition to Terminate Parental Rights, 4/10/18, at ¶ 9.

On September 21, 2018, the court held a contested termination of parental rights hearing[4] at which CYF caseworker, Beverly Peters, and psychologist, Dr. Neil Rosenblum, testified.[5]  After the hearing, the court entered an order terminating Mother's rights.  Mother filed her concise statement of errors complained of on appeal contemporaneously with her timely notice of appeal in compliance with Pa.R.A.P. 1925(a)(2)(i).  In her Rule 1925(b) statement, Mother presents one issue for our consideration:  The trial court abused its discretion and/or erred as matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b) when the record would not support such conclusion.   Pa.R.A.P. 1925(b) Statement, 10/22/18.[6]

---

[4] Cynthia Moore, Esquire, from Kids Voice was present as counsel for L.H.  **See** 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings); **In re K.R.**, 2018 PA Super 334 (Pa. Super. filed Dec. 10, 2018) (en banc).

[5] Mother did not testify at the termination hearing.

[6] Although Mother also includes in her appellate brief an issue claiming the trial court erred in terminating her parental rights under subsections 2511(a)(2), (5) and (8) of the Adoption Act, **see** Appellant's Brief, at 5, we find that issue waived due to her failure to include it in her Rule 1925(b) statement.   **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In termination of parental rights cases, an appellate court's standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. ***In re Adoption of M.A.B.***, 166 A.3d 434, 442 (Pa. Super. 2017). Termination of parental rights, governed by section 2511 of the Adoption Act,[7] requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Mother contends that the trial court abused its discretion by terminating her parental rights under subsection 2511(b) where it "unnecessarily and permanently terminate[d] the loving relationship between L.H. and Mother[, and] L.H. benefits from contact with Mother." Appellant's Brief, at 12. Mother asserts that "the only way to provide this benefit to L.H. is to restore Mother's parental rights." ***Id.***

---

[7] 23 Pa.C.S. §§ 2101-2938

Instantly, Doctor Rosenblum conducted interactional evaluations of L.H. and foster mother and L.H. and Mother in 2018. Doctor Rosenblum also met with Mother and conducted an individual evaluation in April 2017, as well as an updated evaluation in July 2018. At the termination hearing, Doctor Rosenblum testified that although Mother loves L.H., based on his psychological evaluations of Mother he believes her mental health issues interfere with her ability to parent. N.T. Termination Hearing, 9/21/18, at 57. He did not see significant progress with regard to her goals between her two evaluations. *Id.* at 58. Doctor Rosenblum testified that Mother's delusional belief system[8] caused her to be extremely uncooperative with caseworkers and distrustful of therapists, making it impossible for Mother to follow through with her service goals and properly care for L.H. *Id.* at 57-58. With regard to Mother's interactional evaluation with L.H., Doctor Rosenblum noted that they have a "casual" parent-child relationship, that Mother's focus and attention on L.H. was inconsistent, that Mother did some dangerous things during the visit, but that some of the time Mother really enjoyed seeing L.H. *Id.* at 59-60. With regard to whether there was a parent-child attachment or bond between Mother and L.H., Dr. Rosenblum testified that "[L.H]. was

_____

[8] Doctor Rosenblum testified that Mother thought: people were improperly touching L.H.; therapists were engaging in sexual behavior with L.H.'s biological father; and people were breaking into her home and stealing her possessions. Mother also believed she was transmitting bedbugs. N.T. Termination Hearing, 9/21/18, at 57-58.

familiar with [M]other," but that he "did not see as much of an attachment as a familiarity with his mother." *Id.* at 60-61.

Doctor Rosenblum also testified that L.H. "enjoys a very comfortable relationship with" paternal aunt, his foster parent. N.T. Termination Hearing, 9/21/18, 63. He stated that L.H. was very playful, happy and spirited with paternal aunt and L.H. "wanted a hug and he wanted reassurance" from paternal aunt when he was upset about something during his visits with Mother. *Id.* Doctor Rosenblum found evidence of a strong attachment and a "very caring, nurturing relationship" between L.H. and paternal aunt, noting that he believes she would be the appropriate adoptive resource for L.H. *Id.* at 63-64. *See In re T.S.M.*, 71 A.3d 251 (Pa. 2013) (common sense dictates that courts considering termination of parental rights must consider whether child is in pre-adoptive home and whether they have bond with foster parents). Doctor Rosenblum ultimately recommended, within a reasonable degree of psychological certainty, adoption for L.H., stating that "there is still evidence of [Mother's] inability to responsibility parent . . . because of [her] mental health concerns" and that "it would appear that a goal change to adoption would be consistent with his needs and welfare." N.T. Termination Hearing, 9/21/18, at 65.

Caseworker Peters testified at the termination hearing that from L.H.'s birth, Mother's parenting skills were concerning. *Id.* at 14. Caseworker Peters also testified that while Mother did comply with her service goal of having a psychiatric evaluation, she did not follow through with the evaluator's

recommendations, which included taking medication. Because of Mother's paranoia,[9] aggressive behaviors toward caseworkers, and parenting issues, her visits with L.H. never progressed beyond supervised visitation. *Id.* at 19-20. Caseworker Peters also testified that due to Mother's unresolved mental health issues, she is "unable to engage with [L.H.] on a level that allows her bonding" and "mother's emotional state doesn't permit her to consistently perceive the emotional and physical safety needs to [L.H.] accurately." *Id.* at 22-23. With regard to the relationship between Mother and L.H., Caseworker Peters testified that during visits she did not see Mother engage in much play with L.H., she witnessed Mother eating L.H.'s food and drinks during visits, and that while there is a "familiarity" between parent and child, she "wouldn't term it as a bond." *Id.* at 24. Caseworker Peters testified that L.H. had been in paternal aunt's foster care for 20 months at the time of the termination hearing, paternal aunt was very attentive to L.H.'s needs, parents him appropriately, and is meeting all of his "educational, psychological, and developmental needs." *Id.* at 25. *See* 23 Pa.C.S. § 2511(b) (trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."). Finally, Caseworker Peters testified that termination would best serve L.H.'s needs and welfare because it will provide him emotional stability and permanency. *Id.* at 26.

_____

[9] Caseworker Peters testified that Mother reported that CYF had attempted to change L.H.'s gender by "manipulate[ing] his testicles to change him into a girl." N.T. Termination Hearing, 9/21/18, at 18.

While we acknowledge that Mother loves L.H. and that L.H. may enjoy seeing Mother at visits, it does not change the overwhelming evidence that termination would best serve L.H.'s needs and welfare. ***See In re N.A.M.***, 33 A.3d 95 (Pa. Super. 2011) (mere existence of emotional bond does not preclude termination). Here, both Caseworker Peters and Dr. Rosenblum testified that they would not classify Mother and L.C.'s relationship as a "bond," but more as "familiarity." Accordingly, we conclude that based on the record evidence, CYF established by clear and convincing evidence that termination would not have detrimental effects on L.H, but would provide him with the love, comfort, security and stability he needs. ***Id.*** at 103 (under section 2511(b), court should consider importance of continuity of relationships and whether existing parent-child bond can be severed without detrimental effects on child). Thus, the trial court properly terminated Mother's parental rights to L.H. under section 2511(b). ***In re Adoption of M.A.B.***, ***supra***.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/2019